UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:10CR571 SNLJ |
| ) | (FRB) |
| SPARKS A. STONE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM,
REPORT AND RECOMMENDATION
<u>OF UNITED STATES MAGISTRATE JUDGE</u>**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).  Defendant Sparks A. Stone filed a Motion To Suppress Evidence And Statements.  Testimony and evidence was adduced on the motion at a hearing before the undersigned on December 29, 2010.  From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact and conclusions of law:

<u>Findings of Fact</u>

In 2009 agents of the United States Department of Health and Human Services were investigating allegations that a business known as The Home Team Health Services LLC (The Home Team) fraudulently billed Medicare.

On June 12, 2009 Special Agent Timothy Minden, Office of Inspector General, United States Department of Health and Human

Services applied for a warrant to search the business premises of The Home Team located at 6407 Michigan Avenue North, St. Louis, Missouri. The application was made to United States Magistrate Judge David D. Noce. The application was accompanied by the affidavit of Agent Minden. The affidavit set out information learned by Detective Minden during his investigation.

The affidavit set out that The Home Team was at the time a Medicare certified home health care agency. The organizers of The Home Team were listed with the Missouri Secretary of State as Sparks A. Stone, Keisha Stone and Sandra D. Sides. The Home Team was required to keep and maintain records regarding patients for whom it provided services covered by Medicare benefits. The records required to be kept are set out in detail in the affidavit. (See Application and Affidavit for Search Warrant, ¶'s 17-27, pp. 6-8).

The affidavit set out that Agent Minden had interviewed several former employees of The Home Team who worked at the business for various periods from 2007 to 2009. The former employees told Agent Minden that the Home Team was fraudulently billing Medicare for services not actually provided to patients and gave specific examples. Several of the employees reported that Sparks Stone recruited persons to participate in the Medicare home health care program even though he knew they were not eligible to participate and that he also misrepresented to prospective patients

their eligibility for participation in the Medicare home health care program and the manner in which it worked. The witnesses also described how and where records were kept at the business including computers used in the business. Agent Minden obtained and reviewed claims data which corroborated some of the information provided by the witnesses.

The affidavit further set out information obtained by the Missouri Department of Health & Senior Services (DHSS) during a survey conducted by that agency in the spring of 2009 to determine whether the Home Team was in compliance with Medicare regulations. During that survey it was learned that the Home Team was fraudulently billing Medicare for patient services not provided or for patients who were not eligible for the services provided. Specific examples of the information learned during the DHSS survey were set out in Agent Minden's affidavit.

The affidavit concluded with information concerning Agent Minden's prior training and experience concerning how records were kept and maintained on computers and a description of the computer information sought to be obtained during the search. The affidavit was accompanied by an attachment setting forth the particular records sought to be seized. (See Government's Exhibit 1 - Application and Affidavit for Search Warrant).

Based on the information set out in the affidavit Magistrate Judge Noce found probable cause to believe that the

described items could be found on the described premises and issued a warrant to search the premises of The Home Team at 6407 Michigan Avenue North, St. Louis, Missouri. (See Government's Exhibit 2 - Search Warrant).

On June 15, 2009, Agent Minden and others went to 6407 Michigan Avenue North in order to execute the search warrant. They were admitted to the premises by the brother of Keisha Stone and began the search.

Agent Minden contacted Sparks Stone by telephone and informed him of the existence of the search warrant and of the fact that the agents were then executing the warrant at The Home Team place of business. Sparks Stone asked some questions of Agent Minden. Arrangements were then made for Agent Minden to go to the Stone residence, which was nearby the business, to meet with Sparks Stone.

Later that day Agent Minden and Agent Bill Young went to the Stone residence. The agents then met with Sparks Stone at the residence. Keisha Stone was also present. They spoke for about one-half hour. The agents then left the residence. During the interview the agents made no threats or promises to either Sparks or Keisha Stone. Neither Sparks or Keisha Stone were placed under arrest or in any way confined or restrained during the interview.

Discussion

As grounds to suppress evidence seized the defendant asserts in his motion that the warrant to search the premises at 6407 Michigan Avenue North was not supported by probable cause and that it was overbroad.

Search warrants to be valid must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause, may be found in the place to be searched. Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967); Rule 41, Federal Rules of Criminal Procedure. The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions. "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 176 (1949). Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. United States

v. Ventresca, 380 U.S. 102, 109 (1965). Probable cause may be found in hearsay statements from reliable persons, Gates, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, Draper v. United States, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, McDonald v. United States, 335 U.S. 451, 454 (1948). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. Gates, 462 U.S. at 230. Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference if there is a substantial basis for the finding. Gates, 462 U.S. at 236.

The information set out in Agent Minden's affidavit provided ample probable cause to believe the items sought could be found on the premises. The affidavit set out in detail records required to be kept by a health care provider such as The Home Team. The information from several prior employees set out specific instances in which fraudulent claims were submitted for medicare payments. Agent Minden was able to verify the existence of these claims through examination of Medicare records. The affidavit also set out specific information regarding fraudulent claims discovered by the Missouri Department of Health and Senior Services during their survey of The Home Team in the spring of 2009. This information further corroborated the information

provided by the former employees.  All of this provided more than sufficient probable cause to believe that the items sought could be found on the described premises.

The defendant also claims that the warrant was overbroad. A search warrant must describe with particularity the items to be seized. Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). This standard is met if the warrant is sufficiently definite so as to enable the officer with a warrant to reasonably ascertain and identify the objects to be seized. United States v. Steele, 267 U.S. 498, 503-04 (1925). A warrant may authorize the seizure of various classes of items if probable cause for the seizure exists. Andresen v. Maryland, 427 U.S. 463, 480 n. 10 (1976); United States v. Mathison, 157 F.3d 541, 549 (8th Cir. 1998). This is especially true where there is evidence that the business being investigated is permeated by fraud, as was the case here, as is shown by all of the information in the affidavit. United States v. Kail, 804 F.2d 441, 445 (8th Cir. 1986). The affidavit set out sufficient information to provide probable cause for the seizure of each of the "classes" of items described and the warrant was therefore not overbroad.

The defendant also asserts in his motion that law enforcement agents had an improper motive in obtaining the warrant, namely to "limit the defendant's ability to have his company survive as an ongoing business."  The evidence adduced at the

hearing does not support, and in fact refutes, this assertion. The affidavit in support of the warrant specifically set out that The Home Team and its patients would be permitted access to any seized records. (See Application and Affidavit for Search Warrant, ¶ 46, at p. 18.) Agent Minden testified that no one on behalf of The Home Team ever sought access to any seized records following the search.

As grounds to support his motion to suppress statements the defendant avers that at the time the statements were made he was in custody within the meaning of Miranda v. Arizona, 384 U.S. 436 (1966).

In Miranda v. Arizona, 384 U.S. 436 (1966) the Supreme Court held that before questioning a person in custody law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used against him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney one will be appointed for him. Id. at 478-79. The officials may question the person after so advising him if the person voluntarily, knowingly and intelligently waives these rights and agrees to answer questions put to him by the officials. Absent such advice and waiver, statements obtained through interrogation of a person in custody are not admissible against the person at trial. Id. at 479.

The proscriptions of Miranda apply only when the person questioned is "in custody." Illinois v. Perkins, 496 U.S. 292, 297 (1990). A person is in custody within the meaning of Miranda when, under the totality of the circumstances, "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Berkemer v. McCarthy, 468 U.S. 420, 440 (1984); California v. Beheler, 436 U.S. 1121, 1125 (1983). In determining whether a person was in custody at the time of questioning the court must examine the objective circumstances surrounding the interrogation, Stansbury v. California, 511 U.S. 318, 323 (1994), and to determine from those circumstances "how a reasonable (person) in the suspect's position would have understood his situation." Berkemer v. McCarthy, 468 U.S. at 442.

In United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990), the Eighth Circuit Court of Appeals identified a number of factors which the court has looked to in determining whether a person is in custody within the meaning of Miranda. Those factors are as follows: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems

were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.  Id.

Application of these factors, and considering the totality of the circumstances, leads to the conclusion that the defendant was not "in custody" within the meaning of Miranda, at any time when he was questioned by and made statements to Agent Minden.  The defendant was never told he was under arrest nor restrained in any way.  The questioning took place at an arranged meeting at the defendant's home as a result of a telephone call between the agent and the defendant.  The defendant's wife was also present during the interview.  The defendant was asked if he was represented by counsel and he replied that he was not.  He never asked to speak with counsel prior to questioning.  He never asked to leave during the questioning nor asked the agents to leave during questioning.  The defendant avers in his motion that the "agents implied that if he and his wife refused to cooperate this would be a factor that would make it more likely that warrants would be issued against him."  Nothing in the evidence adduced at the hearing supports this assertion and the claim has no basis.  Under the totality of the circumstances here, the defendant was not in custody at the time he made statements to agents.

The defendant apparently also asserts that he had a Sixth Amendment right to counsel at the time of questioning because he was the subject of a criminal investigation.  The right to counsel

under the Sixth Amendment does not attach until the initiation of adversarial judicial proceedings. Kirby v. Illinois, 406 U.S. 682, 689 (1972). The fact that a person is the subject of a criminal investigation does not require the Miranda warnings in an otherwise non-custodial setting. Beckwith v. United States, 425 U.S. 341 (1976); Oregon v. Mathiason, 429 U.S. 492, 495 (1977).

## Conclusion

For all of the foregoing reasons the defendant's Motion To Suppress Evidence And Statements (Docket No. 33) should be denied.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that defendant Sparks A. Stone's Motion To Suppress Evidence And Statements (Docket No. 33) be denied.

The parties are advised that any written objections to this Report and Recommendation shall be filed not later than **February 1, 2011.** Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of January, 2011.